## BARCLAY v. BARCLAY et al.

(Supreme Court, Appellate Division, First Department.   May 5, 1916.)

1. PARTNERSHIP ⊙‐95—PURCHASE OF COPARTNER'S INTEREST—CONSTRUCTION.
    Where a contract contemplated a sale of the good will and firm name by one member to the other on the happening of a future contingency, the fact that its terms referred to "the business" would not overcome the general intent, so as to involve the entire business in a suit to determine rights under the contract.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 142; Dec. Dig. ⊙‐95.]

2. PARTNERSHIP ⊙‐95—PURCHASE OF COPARTNER'S INTEREST—REMEDIES.
    Where a contract contemplated a sale of the good will and firm name by one member to the other on the happening of a future contingency, to be repaid by an annual percentage of the net income as "rental," on breach by the buyer, the remedy of the seller was to recover the annual rental, and not an undivided half of the business and profits; the suit being on the contract, and not on a repudiation of it.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 142; Dec. Dig. ⊙‐95.]

3. PARTNERSHIP ⊙‐67—PROPERTY SUBJECT OF SALE—GOOD WILL.
    The good will of a business, including the right to use the established firm name, is property, capable of sale.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 95–100; Dec. Dig. ⊙‐67.]

4. PARTNERSHIP ⊙‐257—DEATH OF PARTNER—EFFECT OF OWNERSHIP IN COMMON.
    Where a will of a business bequeathed it to two sons in equal shares, and in a later agreement they recited that they owned it in equal shares as tenants in common, on death of one, an undivided one-half of the good will of the business passed to his heirs.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig. ⊙‐257.]

5. PARTNERSHIP ⊙‐257—AGREEMENTS—RIGHTS OF PARTIES.
    Where partners agreed that the survivor should have the election to purchase the share of the other in the good will and firm name at an annual "rental," the contract would not be construed to permit the sur-

⊙‐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vivor to use the name and pay the "rental" for a period, and then refuse
to pay; the equities requiring full performance if he elected to purchase.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig.
⬡⟶257.]

6. NEW TRIAL ⬡⟶14—GROUNDS—SUFFICIENCY—OBITER DICTUM.

A motion for new trial on affidavits of defendant that he made efforts
to make a settlement with plaintiff, merely showing good faith, was
properly denied, where the decision did not turn on fraud or good faith;
expressions in the opinion touching thereon being obiter dictum.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 20; Dec. Dig.
⬡⟶14.]

Appeal from Trial Term, New York County.

Suit by Clara S. Barclay, as trustee under the will of William O.
Barclay, deceased, against Reginald G. Barclay and Barclay & Co.
Judgment for plaintiff, and defendants appeal. Modified and affirmed,
and order denying new trial affirmed.

See, also, 155 N. Y. Supp. 221, 632; 162 App. Div. 557, 147 N. Y.
Supp. 597.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, and
DAVIS, JJ.

Charles F. Brown, of New York City, for appellants.
D-Cady Herrick, of New York City, for respondent.

SCOTT, J.   Plaintiff sues in equity for a determination of and an
accounting for her interest as co-owner of the right to use the firm
name of Barclay & Co., and of the good will, trade-marks, etc., used
in the conduct of the business carried on under that name.   The cir-
cumstances disclosed by the evidence are unusual, and we have been
able to find no adjudicated case dealing with precisely such a state of
facts.   In the year 1873 there was organized in the city of New York
a copartnership under the firm name of Barclay & Co., composed of
Alexander Barrie and Thomas Barclay.   That firm and its successors
under the same firm name have carried on the business of manufac-
turing and selling soap, perfumes, and other toilet articles; their trade
being largely with foreign countries.   The good will of the business, and
the right to use the firm name, trade-marks, and formulas used in the
conduct of the business, were in 1873 the property of George C. Bar-
clay, who was not a member of the firm, but who rented to the firm
the right to use said firm name, good will, trade-marks, etc.   Just how
this came about does not appear, but the fact of George C. Barclay's
ownership of said firm name, good will, etc., is agreed to and accepted
by all the parties to this action.

George C. Barclay died in November, 1897, leaving a last will and
testament, dated on June 3, 1897, by which he bequeathed "the busi-
ness, good will, and firm name of Barclay & Co., and all trade-marks
used in connection therewith, to my sons William O. Barclay and
Reginald G. Barclay, in equal shares."   Shortly after his death, and
on December 31, 1897, a copartnership was formed under the firm
name of Barclay & Co., by William O. Barclay, Reginald G. Barclay,
and Alexander Barrie for the purpose of carrying on the business

⬡⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hereinbefore described.  The three partners agreed to share the profits and losses equally.  On the same date an agreement was entered into between Mary A. Barclay and others, as executors, etc., of George C. Barclay, deceased, of the first part, and said William O. Barclay, Reginald G. Barclay, and Alexander Barrie, as copartners, of the second part, whereby the executors granted to the copartners for the term of the copartnership the right to carry on the business of manufacturing and selling merchandise of the character theretofore dealt in by the former firm of Barclay & Co., and to attach and make appurtenant to said merchandise the trade-marks named in the agreement and at the time of its execution used in the conduct of said business, and also in said business to use the firm name of "Barclay & Co."  The copartners on their part agreed to pay to said executors, as rental for the said business, good will, trade-marks, and firm name, 50 per cent. of the annual net profits and gains of the entire business to be carried on by said copartners as Barclay & Co.

This copartnership was renewed and extended from time to time and the same business conducted by it under the name of Barclay & Co., until the death of William O. Barclay on October 17, 1901, and after his death the same business was carried on by the surviving copartners under the same firm name until January 1, 1913, when Barrie ceased to be a member of the firm.  Thereafter Reginald G. Barclay carried on the business alone under the same firm name until May, 1913, when he caused the defendant corporation to be organized under the laws of the state of Delaware, and transferred all his interest in the business, good will, etc., to such corporation, which has carried on the business under the name of Barclay & Co. until the present time.

There was executed contemporaneously with each renewal of the copartnership a lease to it of the right to use the firm name of Barclay & Co., and the good will, trade-marks, etc., so that during the whole period covered by the several copartnership agreements the good will, including the right to use the firm name, trade-marks, etc., was held in the ownership of the Barclay family, and used and enjoyed by the successive copartnerships by virtue of a lease from the Barclays, and it was distinctly agreed in each copartnership agreement and in each lease of the good will that no copartner should acquire any individual title or right to use said good will, etc., by virtue of his copartnership, and that in case of dissolution said good will, etc., should not be treated or estimated in any way as an asset of the copartnership.  It follows that William O. Barclay and Reginald G. Barclay, down to the date of the death of William, were co-owners of the good will, etc., bequeathed to them by their father, and entitled as such co-owners to share in the rental paid by the copartnership of Barclay & Co., and each of them as a copartner in said firm was also entitled to one-third of the net profits realized by said firm out of the business transacted by it.

While matters stood thus, and on August 1, 1900, William O. Barclay and Reginald G. Barclay entered into an agreement upon the construction and effect of which depend the rights of the parties to this controversy.  This agreement starts out with the following preamble,

which is of some importance as throwing light upon what the parties desired to effect by their agreement. It reads as follows:

"Whereas, the parties hereto are the owners in equal shares, as tenants in common, of the business, good will, and firm name of Barclay & Co., and of all trade-marks, copyrights, and labels used in connection therewith, subject to the payment to Blanche Barclay, during her life, of $100 per month, and subject to terminable copartnership articles heretofore made between the parties hereto and Alexander Barrie; and

"Whereas, the parties hereto desire that, upon the death of either, the survivor shall have the right, in the manner and upon the terms and conditions hereinafter specified, either alone or in copartnership with another or others, or through a corporation of which he may be a member, to continue the business of Barclay & Co., and to use all trade-marks, copyrights, and labels now owned or hereafter acquired by the parties hereto; and

"Whereas, the parties hereto further desire, if either party hereto, while living, or after his death, his legal representatives, shall decide to sell his half interest in said business, good will, firm name, trade-marks, copyrights, and labels, that the other party shall have 60 days within which to decide whether he will purchase the same."

## The parties then agreed as follows:

I. "Upon the death of either of the parties hereto, the survivor shall have, and is hereby granted, the exclusive right, during his life, or until a sale made as hereinafter provided, to use the half interest of such deceased party in the good will and firm name of Barclay & Co., and in all trade-marks, copyrights, and labels now owned or hereafter acquired by the parties hereto, upon condition, nevertheless, that, and so long as, the said survivor shall pay to the legal representatives of such deceased party, each year, as rental for the use of such half interest, a sum equal to 27½ per centum of the annual net profits of the business of Barclay & Co."

II. "Such survivor hereby covenants to pay to the legal representatives of such deceased party, each year, so long as such survivor shall, under the preceding article, use such half interest in the good will or firm name of Barclay & Co., and in the trade-marks, copyrights, or labels now owned or hereafter acquired by the parties hereto, a sum equal to 27½ per cent. of the annual net profits of the business of Barclay & Co. Such legal representatives shall have no voice or control, during such time, in the management of said business, and no interest or property in the profits as such, and shall not be liable for the debts, expenses, or losses of said business. Reference is hereby made to profits solely to fix the rental to be paid by such survivor for the use of the said half interest of such deceased party."

The agreement then provides how the net profits should be ascertained, and how payment should be made to the legal representatives of the brother first dying. It was further provided that neither party should, during the lifetime of the other party, sell his half interest in the business, good will, etc., without affording the other party an opportunity to purchase, and, in case such opportunity was accepted, the price to be paid should be ascertained in a specified manner. It was further provided that in case of the death of either party his legal representatives should not sell his half interest without affording to the surviving party an opportunity to purchase at a price to be ascertained as provided in case of a sale from one party to the other during the lifetime of both. It was also agreed that, when Alexander Barrie should cease to be a member of the firm of Barclay & Co., the rental to be paid for the use of the deceased party's half interest should be increased to 33⅓ per centum of the profits of Barclay &

Co. There was an addendum to the effect that in no event should the legal representatives of a deceased party be deemed to be partners in the business of Barclay & Co.

William O. Barclay, who died in October, 1901, left a last will and testament, by which he appointed his wife, the plaintiff, and Reginald G. Barclay, his brother, executors and trustees, and gave all his property to them upon certain trusts. Only the plaintiff qualified and has acted. By the twelfth clause of his will he authorized his trustees—

"to retain as a trust investment my interest in the business, good will and firm name of Barclay & Co., and in all trade-marks used in connection therewith, and to lease the same upon such rentals and upon such terms, from time to time, as they shall deem best, or, with the concurrence of my said wife, to sell the same either at public or private sale."

As has been said, upon the death of William O. Barclay, his brother, Reginald G. Barclay, and Alexander Barrie organized a copartnership to carry on the business of Barclay & Co., and at the same time Clara S. Barclay, as executrix, etc., of her husband's will, and Reginald G. Barclay, leased to Barclay & Barrie, as copartners as aforesaid, the right to carry on business under the firm name of Barclay & Co., and the good will thereof, and the right to use the trade-marks, etc.; the agreement being similar in terms to the like leases made by William O. and Reginald Barclay during the lifetime of the former.

Under this agreement plaintiff was regularly paid $27\frac{1}{2}$ per cent. of the net profits of the business, until Barrie retired from the copartnership on December 31, 1912, and was thereafter paid by Reginald G. Barclay $33\frac{1}{3}$ per cent. of said net profits until December 31, 1914, after which date he refused to make further payments. After Barrie retired from the copartnership Reginald G. Barclay continued the business under the firm name of Barclay & Co., having made and filed a certificate under the statute, until May 7, 1914, when he transferred to the defendant corporation all his right, title, and interest in and to the business and assets of Barclay & Co., and—

"in and to the name of Barclay & Co., and in and to the good will of the aforesaid business and said name, and in and to any and all trade-marks, copyrights, labels, processes, brands, inventions, and improvements, whether used in connection with or secured under letters patent or otherwise, which the party of the first part owns, or in which he has any interest."

It was expressly stipulated that this agreement did not cover or include, and should not be deemed to cover or include, any rights or interest which the assignor had under or by virtue of his agreement with his brother William, dated August 1, 1900, but by a separate agreement executed on the same day Reginald G. Barclay authorized the defendant corporation to exercise and use the said last-mentioned rights and privileges in consideration of the payment to him of $33\frac{1}{3}$ per cent. of the net profits of the business carried on by said defendant corporation. Reginald G. Barclay expressly reserved the right at any time to terminate the right of the defendant corporation to exercise and enjoy said rights and privileges. This right he undertook to exercise by a notice dated December 28, 1914.

The corporation defendant was organized under the laws of the state of Delaware, under the corporate name of Barclay & Co., with

an authorized capital of $3,000,000, divided into $1,000,000 of 8 per cent. cumulative preferred stock and $2,000,000 of common stock, of which there was issued to Reginald G. Barclay $500,000 of preferred stock, and all but 15 shares of the common stock, at the par value of $1,998,500, in consideration of the above-mentioned transfer by him to the company, including the conveyance to it of a piece of real estate valued at $55,000. The value of the assets conveyed to the corporation by Reginald G. Barclay (exclusive of his share of the good will, etc., of which he was a half owner) seems to have been something slightly less than $300,000, so it is apparent that a very considerable value was placed upon "the right to use the firm name of Barclay & Co., and the good will, trade-marks, etc."

The plaintiff, upon this state of facts, sues to procure a determination of, and to enforce, her rights as executor and trustee under her husband's will. On the trial before the Special Term she asked for relief in one of three alternative forms: First. That defendant Barclay be required to transfer and deliver to her one-half of the common stock delivered to him by the corporation (less 550 shares, representing the real estate conveyed to it by him) and one-half of the $500,000 preferred stock issued to him. Second. That defendants account for and pay over to the plaintiff one-third of the entire profits of the business of defendant corporation from January 1, 1915, so long as either defendant shall use the name of Barclay & Co., and the good will, trade-marks, etc., formerly used in carrying on business under that name. Third. That defendants account for and pay over to plaintiff one-half of said profits from said January 1, 1915.

The judgment has adopted the first of these alternative forms of relief, and has directed defendant Reginald G. Barclay to assign and transfer to plaintiff one-half of all the stock issued to him by the defendant corporation, less 550 shares of the common stock. This has been done apparently upon the theory that the estate of William O. Barclay was at the time of the organization of the corporation the owner of one-half of all the capital and assets of Barclay & Co., as well as one-half of the good will, trade-name, etc., for it clearly appears that the stock was issued to Reginald G. Barclay, in part, for assets and capital assigned by him outside of the good will, etc.

The history of the case shows that, from the beginning the business done by Barclay & Co., and the good will, etc., used in the conduct of that business, have been carefully kept separate so far as ownership is concerned, and have always been separately owned. The extensive business of Barclay & Co. could not have been carried on only by the use of the firm name, good will, trade-marks, etc., without the use of capital, and it is reasonable to assume, as indeed must have been the case, that each successive firm had some amount of tangible capital, in addition to the right to use the firm name, trade-marks, etc., which it rented from the descendants of George C. Barclay.

Undoubtedly, when William O. Barclay died in 1901, he had some interest in the tangible assets of the firm of Barclay & Co., outside of his part ownership of the good will, trade-marks, etc., and as part owner of which he stood in the position of lessor to the firm. We may safely assume that the surviving partners duly accounted to his execu-

trix for this interest. At least there is no evidence that they did not, and no relief respecting such interest is asked for by the complaint. Any such interest in the capital and profits of the firm is excluded from the operation of the agreement of August 1, 1900. It is true that the "business" is frequently referred to in that agreement; but that, as to which a right of use is given to the survivor of the two brothers, is not the interest of the one first dying in the general assets of the firm, but "the half interest of such deceased party in the good will and firm name of Barclay & Co., and in all trade-marks, copyrights, and labels now owned or hereafter acquired by the parties hereto," and it was for the use of this half interest in this intangible property that the surviving brother was to pay a percentage, always less than one-half, of the net profits of the business conducted by Barclay & Co.

[1] In our view, therefore, we have nothing to do in this action with the interest which William O. Barclay had, at the time of his death, in the capital and assets of Barclay & Co., outside of the leased good will, etc., and should not make an award to plaintiff of any portion of the capital stock on the assumption that the assets, outside of the good will, etc., transferred by Reginald G. Barclay to the defendant corporation, represented property of William O. Barclay. If an award of stock were to be made to plaintiff upon this basis, there should be retained by Reginald G. Barclay common stock to the par value of $298,500 for tangible assets assigned, which included the real estate transferred by him to the company. The balance of the common stock and all of the preferred stock which was issued to Reginald G. Barclay must be deemed to have been so issued in return for the right to use the trade-name of Barclay & Co., and its trade-marks, good will, etc., of which Reginald G. Barclay and the estate of his deceased brother are equal owners, and represents the value placed upon that good will, etc., by both defendants. If, therefore, we were to enforce a purchase by the defendant Reginald G. Barclay of plaintiff's interest in the good will, etc., the award to plaintiff should be of one-half of the $500,000 of preferred stock issued to defendant Barclay, and so much of the common stock issued to and held by him as will remain after deducting the $298,500 above referred to. This would give plaintiff about $850,000 of common stock and $250,000 of preferred stock.

Judging from the amount paid plaintiff in 1913 as one-third of the profits of the business, this stock interest, if the business be as well managed in the future as in the past, should yield to plaintiff about the same annual income, and possibly more, than she received while the business was conducted by Reginald G. Barclay individually.

[2] We are of opinion, however, that the preferable form of relief would be to award plaintiff, by way of rental for the use of the good will, etc., the same proportion of the net profits of the business transacted with the aid of the good will, etc., that was provided for by the agreement of August, 1900, to wit, 33⅓ per cent.

The action, as indicated by the complaint, is based upon that agreement, and not upon a repudiation of it, and although the plaintiff has accepted and now seeks to sustain a judgment providing for the sale of her interest in the good will, etc., to the defendant corporation in exchange for a stock interest therein, there is no indication in the com-

plaint that she considered, when the action was commenced, that this was her appropriate remedy, and she expressed upon the trial a willingness to accept this proportion of the profits.

[3, 4] To determine the respective rights of the parties to this action, we must go back to the agreement of August 1, 1900, and read it in the light of the nature of the property with which it dealt. It is no longer a question in this state that the good will of a business, including the right to use the established firm name, is property, capable of sale. Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605. That William O. Barclay and Reginald G. Barclay owned the good will and the right to use the firm name of Barclay & Co. as tenants in common is clear, both from the terms of their father's will, in which the property was bequeathed to them "in equal shares," and from the recitation as to the nature of their ownership in the agreement of August 1, 1900. Consequently, on the death of William O. Barclay, an undivided one-half of the good will passed under his will to his executrix and trustee, and thenceforth his estate and Reginald G. Barclay were co-owners, with the organization adapted to use effectually the firm name and good will in the hands of Reginald G. Barclay and Alexander Barrie as surviving partners of the firm. Manifestly it was to the interest both of the members of the copartnership of Barclay & Co., and of the co-owners of the good will and right to use the firm name, that the leasing arrangement which had obtained since 1873 should be continued.

It may be, as defendants argue, that if there had been no agreement between the co-owners each could have used separately the firm name, the good will, and the trade-marks, so that there would have been two firms, by the same firm name, dealing in the same articles, under the same trade-marks and copyrights. Lepow v. Kottler, 115 App. Div. 231, 100 N. Y. Supp. 779. This would have resulted in confusion, which would have been to the manifest disadvantage of all concerned, and would have tended to greatly depreciate the value of the firm name, good will, trade-marks, etc., to both owners. Hence the agreement of August 1, 1900, made at a time when it could not be known which brother would die first, and which was clearly intended, when either should die, to conserve the interests both of the deceased and of the survivor. Hence it was left to the survivor to determine whether or not he would acquire the beneficial use of the interest of the deceased, so as to preserve for his own firm or for himself the exclusive right to the good will, firm name, etc. If he elected not to do so, the representative of the deceased brother might sell the interest of the latter, but not without giving the survivor the first right to purchase, and if he had refused to do that the survivor could probably have forced the sale of the entire good will, trade-marks, right to use the firm name, etc., and brought about a division of the proceeds. Slater v. Slater, supra; Schouler on Personal Property; Barney v. Leeds, 54 N. H. 128; Ennis v. Hutchinson, 30 N. J. Eq. 110.

[5] Although there are words used in the agreement of August 1st, 1900, which suggest that the survivor of the two brothers might use the half interest of the decedent only for so long as he saw fit, and might then discontinue its use and cease paying rental therefor, we

do not consider that the agreement should be so construed, for after thus using it for any considerable time it would be impossible to restore the estate of the decedent to so advantageous a position as that which it occupied at the time of the death, as it is obvious that one who attempted to build up a business in competition with a well-established organization of long standing, even though it might be entitled to use the same firm name and trade-marks would be at a great disadvantage, and the longer the exclusive use by the established organization had lasted, the greater would be the disadvantage. In our opinion the true construction of the agreement of August 1, 1900, is that, when either brother died, the survivor was put to his election to determine whether or not he would acquire the right to use his deceased brother's interest in the good will, trade-marks, firm name, etc., so as to be put in possession of the sole and exclusive right to use such trade-marks, name, good will, etc., in carrying on business. If he elected not to acquire his brother's interest, the representatives of the estate of the latter would have the right to take such steps as might seem advisable. But if the survivor elected to rent the use of his brother's interest, he was bound to pay the agreed rental therefor "so long as such survivor shall use such half interest," which means, as we construe it, so long as he shall continue, either alone or in association with others, or by means of a corporation (the organization of which was provided for in the preamble), to do business under the name of Barclay & Co., and use therein the trade-marks, copyrights, etc.

It was certainly never intended by the parties to the agreement that the survivor of the two co-owners of the firm name and good will should be enabled to play fast and loose with the interest of his deceased co-owner by using the latter's interest to build up and extend the trade of his own business organization, and when he had thereby attained what appeared to be an impregnable position, repudiate his obligation to pay rental, continue to use the firm name, good will, trade-marks, etc., by virtue of his own ownership therein, and leave his brother's estate to make what use it could of a depreciated interest. To so construe the agreement would be contrary to every principle of equity, especially since the survivor, by forming a corporation under the name of Barclay & Co., and filing a certificate to do business in this state, has appropriated the name, so that no corporation the plaintiff might form could use the same name (General Corporation Law [Consol. Laws, c. 23] § 6), without which the trade-marks, good will, etc., would be practically valueless to her.

In our opinion Reginald G. Barclay himself adopted the true construction of the agreement of August 1, 1900, when, in addition to transferring to the corporation of Barclay & Co., his own half interest in the good will, etc., he also gave it the right to use his deceased brother's half interest, which had come to him under the agreement, and stipulated that he should be paid (with a view to payment over to the estate) 33⅓ per cent. of the net profits, not counting as an expense any salary paid to him. By this arrangement he carried out the spirit, and as I think the letter, of the agreement of August 1, 1900, and in my opinion the decree to be entered herein should provide for a continuance of this payment, and should run against both Reginald

G. Barclay and the corporation of Barclay & Co., for they are practically identical.

[6] There is also brought up for review an order denying a motion for a new trial, based upon affidavits showing the efforts made by defendant Barclay to arrive at some mutually satisfactory basis of settlement with plaintiff. This motion seems to have been made solely for the purpose of meeting certain reflections upon Reginald G. Barclay's good faith in his dealings with the plaintiff. The motion was properly denied, because the determination did not at all turn on any question of fraud or good faith, and whatever was said on that subject in the opinion was obiter dictum. In point of fact we are unable to find, in this light of Reginald G. Barclay's attempts to arrive at an agreement, that he had acted or intended to act unfairly towards plaintiff. The whole correspondence (which was not before the court when its opinion was written) indicates that defendant Barclay recognized from the first that plaintiff was entitled to some share in the stock or the profits of the corporation which he organized to carry on the business, and that he made an honest effort to arrive at an agreement with her. Whether he offered her more or less than she was entitled to is immaterial. It was only when an amicable settlement appeared to be impossible that he invited a legal determination of the respective rights of the parties by refusing to make further payments.

The judgment must therefore be modified, in accordance with this opinion, and, as modified, affirmed, without costs to either party in this court. The order denying the motion for a new trial is affirmed, also without costs.

The order herein may be settled on notice, as well as such modifications of the findings as may be necessary. All concur.

